**No. 24-5775**

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

## UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

**v.**

## BRYAN CONLEY

*Defendant-Appellant.*

On Appeal from United States District Court for the Western District of Kentucky, No. 3:23-cr-00014-1

## BRIEF OF THE APPELLANT, BRYAN CONLEY

William H. Brammell, Jr.
WICKER / BRAMMELL PLLC
323 W. Main Street, 11th Fl.
Louisville, Kentucky 40202
Telephone: (502) 780-6185
bill@wickerbrammell.com
*Counsel for Bryan Conley*

# TABLE OF CONTENTS

Table of Authorities ................................................................................ iii

Statement Regarding Oral Argument ...................................................... 1

Jurisdictional Statement .......................................................................... 1

Statement of the Issues............................................................................ 2

Statement of the Case.............................................................................. 3

    I.    The Indictments........................................................................ 3

    II.   Mr. Conley's Military Service and Family Background ............ 4

    III.  The Trial.................................................................................... 5

    IV.  The Verdict................................................................................ 9

    V.   Sentencing ................................................................................ 9

Summary of the Argument...................................................................... 10

Argument................................................................................................. 11

    I.    The District Court Erred in Denying Mr. Conley's Motion for Judgment of Acquittal on Count 2 .............................................................. 11

    II.   The District Court Erred in Denying Conley's Motion to Sever Counts 1-2 From Counts 3-15, Resulting In Substantial Prejudice........................ 16

        A.    The Charges Were Improperly Joined Under Rule 8(a) .................... 17

        B.    Even If Joinder Were Proper, Rule 14(a) Required Severance Due to Prejudice............................................................................. 18

    III.  The District Court Erred in Admitting Evidence Regarding Conley's Flight ....................................................................................... 21

IV.  The Cumulative Effect of these Errors Warrants a New Trial ...................22

Conclusion ..............................................................................................................23

Certificate of Compliance/Certificate of Service.....................................................25

Record Designation.................................................................................................26

# TABLE OF AUTHORITIES

Cases                                                          Page(s)

*Blackledge v. Perry*, 417 U.S. 21 (1974)........................................................................12

*Bragan v. Poindexter*, 249 F.3d 476 (6th Cir. 2001)................................... 11-12, 13

*Bordenkircher v. Hayes*, 434 U.S. 357 (1978) ........................................................14

*Old Chief v. United States*, 519 U.S. 172 (1997) ....................................................19

*United States v. Andrews*, 633 F.2d 449 (6th Cir. 1980)..........................................12

*United States v. Chavis*, 296 F.3d 450 (6th Cir. 2002).............................................18

*United States v. Deitz*, 577 F.3d 672 (6th Cir. 2009)................................................22

*United States v. Dillon*, 870 F.2d 1125 (6th Cir. 1989)............................................21

*United States v. Dupree*, 323 F.3d 480 (6th Cir. 2003)............................................12

*United States v. Gallo*, 763 F.2d 1504 (6th Cir. 1985).............................................19

*United States v. Goodwin*, 457 U.S. 368 (1982) ...........................................12, 13, 14

*United States v. Hernandez*, 227 F.3d 686 (6th Cir. 2000) .....................................22

*United States v. Johnson*, 763 F.2d 773 (6th Cir. 1985) ..........................................19

*United States v. LaDeau*, 734 F.3d 561 (6th Cir. 2013)...............................14, 15, 16

*United States v. Moon*, 513 F.3d 527 (6th Cir. 2008) ..............................................12

*United States v. Myers*, 550 F.2d 1036 (5th Cir. 1977)......................................21, 22

*United States v. Perez-Martinez*, 746 F. App'x 468 (6th Cir. 2018) ........................21

*United States v. Poole*, 407 F.3d 767 (6th Cir. 2005) ..............................................12

*United States v. Rox*, 692 F.2d 453 (6th Cir. 1982)............................................17, 19

<u>Misc.</u>

18 U.S.C. § 2423 ....................................................................................................3

18 U.S.C. § 3231 ....................................................................................................1

28 U.S.C. § 1291 ....................................................................................................1

## STATEMENT REGARDING ORAL ARGUMENT

Defendant-Appellant Bryan Conley ("Mr. Conley") does not request oral argument. The legal issues will be fully presented in the briefs, and argument is unnecessary to aid the Court's resolution of this appeal.

## JURISDICTIONAL STATEMENT

The District Court had jurisdiction under 18 U.S.C. § 3231, which grants federal courts jurisdiction over criminal offenses against the laws of the United States. On August 22, 2024, Mr. Conley timely filed a Notice of Appeal (R. 168, PageID # 2259-2260) from the District Court's final judgment, entered on August 21, 2024 (Judgment, R. 166, PageID # 2247).

This Court has jurisdiction under 28 U.S.C. § 1291, which provides for appellate review of final decisions of the district courts.

## STATEMENT OF THE ISSUES

1. Under the Due Process Clause, does a presumption of prosecutorial vindictiveness arise when the Government adds a more serious charge carrying a significantly harsher penalty only after Mr. Conley successfully moved to dismiss the original indictment for a Speedy Trial Act violation?

2. Did the District Court err in denying Mr. Conley's motion to sever, where the joinder of sex trafficking charges with bank fraud, identity theft, and interstate threats created an overwhelming risk of prejudice that could not be cured by jury instructions?

3. Did the District Court's admission of flight evidence as substantive proof of guilt violate Federal Rule of Evidence 404(b), where the Government failed to establish a sufficient connection between Mr. Conley's conduct and consciousness of guilt regarding the charged offenses?

4. Did the cumulative effect of multiple errors— including improper closing arguments, the admission of prejudicial evidence, and the joinder of unrelated offenses—deprive Mr. Conley of a fair trial under the Fifth and Sixth Amendments?

## STATEMENT OF THE CASE

### I.     The Indictments

Mr. Conley was indicted on February 20, 2019. (*See United States v. Bryan Conley*, Case No. 3:19-cr-00019-DJH-1, at R. 11). A superseding indictment followed on June 4, 2019, adding charges of kidnapping, bank fraud, and aggravated identity theft. (*Id*., at R. 22). A second superseding indictment was filed on September 18, 2019. (*Id*., at R. 45). Over three years later, on January 11, 2023, the district court granted Mr. Conley's motion to sever Count 1 (charge related to A.Y.) from Counts 2-14 (charges related to R.W.) of the second superseding indictment, over the government's objection. (*Id*. at R. 156). Soon thereafter, Mr. Conley moved to dismiss the case under the Speedy Trial Act and the District Court dismissed all charges without prejudice on February 1, 2023. (*Id*., at R. 172).

Six days after the case was dismissed, on February 7, 2023, the Government obtained a new indictment that largely mirrored the prior charges but added Count 2, transportation of a minor (A.Y.) for criminal sexual activity under 18 U.S.C. § 2423(a), which—unlike the prior indictments—carried a mandatory minimum sentence of ten years. (R. 4, PageID ## 45-63). Mr. Conley again moved to sever the counts related to A.Y. (counts 1-2) from the counts related to R.W., (counts 3-15), but the Court ruled differently this time and denied his motion to sever. (R. 106).

## II.    Mr. Conley's Military Service and Family Background

Mr. Conley was born and raised in rural Ohio in a household marked by instability, domestic violence, and alcoholism. (PSR, R. 158, PageID # 2195; Sealed Sentencing Memo, R. 161, pp. 2-3). Despite these hardships, he completed high school and enlisted in the United States Army in 2004. (R. 158, PageID # 2196).

During his fourteen years of military service, Mr. Conley served in the 101st Airborne Division, completing four combat tours in Afghanistan and multiple training missions in Africa. He held leadership roles as a Team Leader, Squad Leader, and Air Assault Instructor. Throughout his service, he survived multiple encounters with improvised explosive devices (IEDs), resulting in shrapnel wounds, concussions, and exposure to significant combat trauma. He received an honorable discharge from the Army in March 2018 and later briefly served in the Tennessee National Guard before transitioning to civilian life. (R. 161, p. 3).

At the time of his arrest, Mr. Conley had no prior criminal history. (R. 158, PageID # 2194). He is a father of four children, including a son with severe medical needs requiring ongoing care. (*Id.* at PageID # 2195). After his arrest, medical evaluations indicated that he met the criteria for a Personality Disorder with Paranoid and Antisocial Features, as well as potential Trauma-and-Stressor-Related Disorder stemming from his combat experiences. (R. 161, p. 7).

III.  <u>The Trial</u>

The government's case against Mr. Conley rested largely on the testimony of the two alleged victims, A.Y. and R.W., along with forensic evidence, financial records, and electronic communications. Prosecutors alleged that Mr. Conley transported A.Y., a seventeen-year-old, across state lines for illegal sexual activity and later engaged in fraudulent financial schemes and threats involving R.W.

To support its allegations concerning A.Y., the government presented evidence that she met Mr. Conley through a dating app, where she had created a profile seeking a "sugar daddy." (Trial Transcript - Vol. 2, R. 138, PageID ## 1239-1321). Investigators introduced records of their online communications, which purported to show Mr. Conley using an alias to engage with A.Y. Surveillance footage and travel records demonstrated that Mr. Conley drove A.Y. across multiple states, and forensic analysis of electronic devices purportedly contained explicit material involving her. The prosecution further relied on testimony from A.Y., who described her interactions with Mr. Conley and the nature of their relationship. (Trial Transcript - Vol. 2, R. 138, PageID ## 1239-1321).

As to R.W., the government's theory was that Mr. Conley manipulated and controlled her for financial gain. Prosecutors presented text messages and ransom demands allegedly sent from R.W.'s phone while she was with Mr. Conley, arguing that he orchestrated a scheme to extract money from her family. (Trial Transcript -

Vol. 3, R. 139, PageID ## 1358-1392). The Government introduced testimony from R.W.'s parents, who described R.W.'s cognitive limitations and their efforts to locate her. (Trial Transcript - Vol. 3, R. 139, PageID ## 1358-1392, 1401-1414). FBI agents testified about evidence recovered from Mr. Conley's vehicle, including restraints, which the Government characterized as tools of coercion, as well as items that had been planted by law enforcement as part of the ransom exchange. (Trial Transcript – Vol. 4, R. 140, PageID ## 1714-15; Trial Transcript - Vol. 5, R. 141, PageID ## 1841-49).

The financial crimes charges stemmed from Mr. Conley's alleged misuse of R.W.'s identity and financial accounts. The government introduced bank records and electronic communications to support its claim that Mr. Conley fraudulently accessed R.W.'s funds and personal information. (Trial Transcript - Vol. 3, R. 139, PageID ## 1556-68). Prosecutors called banking representatives to authenticate account activity and presented messages they argued linked Mr. Conley to unauthorized transactions. (*Id*.). The government contended that these financial crimes were part of a broader pattern of exploitation. (Trial Transcript - Vol. 5, R. 141, PageID ## 1841-49).

The prosecution further introduced evidence of Mr. Conley's conduct after his arrest, contending that his removal of an ankle monitor and unauthorized travel demonstrated consciousness of guilt. (Trial Transcript - Vol. 4, R. 140, PageID ##

1677-1682). The government relied on this conduct to argue that Mr. Conley knew he was guilty and sought to evade prosecution. (Trial Transcript - Vol. 5, R. 141, PageID ## 1880-81).

The defense vigorously challenged the government's case, focusing on inconsistencies in the testimony of the alleged victims and emphasizing that the victims' interactions with Mr. Conley were voluntary. A.Y. did not know Mr. Conley's name, had actively sought out relationships with older men in the past, and misrepresented her age online. (Trial Transcript - Vol. 2, R. 138, PageID ## 1300-1317). During cross-examination, A.Y. acknowledged that she willingly left home, traveled with Mr. Conley, and participated in the conduct at issue. (*Id.*). The defense argued that A.Y.'s misrepresentations and voluntary participation undercut the government's claims of coercion. (Trial Transcript - Vol. 5, R. 141, PageID ## 1871-72).

The defense similarly contested the allegations concerning R.W. Defense counsel elicited testimony demonstrating that R.W. met with Mr. Conley voluntarily, had access to her phone, and had multiple opportunities to leave but did not. (Trial Transcript - Vol. 3, R. 139, PageID ## 1534-54). The defense introduced evidence suggesting that R.W. had financial motivations for staging a fake kidnapping, pointing to her history of debts and the ransom demands sent to her parents. (Trial Transcript - Vol. 3, R. 139, PageID ## 1408-14). By emphasizing these

inconsistencies, the defense argued that R.W.'s account was unreliable and that Mr. Conley had no intent to harm or exploit her. (Trial Transcript - Vol. 5, R. 141, PageID # 1871).

Regarding the financial crimes, the Government failed to establish that Mr. Conley acted with fraudulent intent. Through cross-examination, defense counsel pointed out numerous gaps in the financial evidence, questioning whether Mr. Conley had control over the accounts in question. The defense also suggested that R.W. may have participated in the financial transactions willingly and that any irregularities in the accounts did not amount to criminal fraud. (Trial Transcript - Vol. 5, R. 141, PageID ## 1875-76).

Finally, the defense objected to the introduction of evidence regarding Mr. Conley's alleged flight, arguing that the five-month delay between his arrest and the removal of his ankle monitor severely weakened any inference of guilt. (Trial Transcript - Vol. 4, R. 140, PageID ##1678-79; *see, also*, Objection, R. 55, PageID ## 505-10). The Government failed to link Mr. Conley's decision to leave the jurisdiction with a fear of prosecution, as opposed to other personal reasons. (*Id.*).

Throughout the trial, the defense maintained that the government's case relied on speculation and exaggeration rather than concrete evidence. By challenging the credibility of the witnesses and the sufficiency of the evidence, the defense argued

that the prosecution had not met its burden of proving guilt beyond a reasonable doubt. (Trial Transcript - Vol. 5, R. 141, PageID ## 1866-77).

IV.      The Verdict

On December 15, 2023, the jury found Mr. Conley guilty on all counts: transportation of a minor for criminal sexual activity (Count 1), transportation of a minor (Count 2), kidnapping (Count 3), bank fraud (Count 4), aggravated identity theft (Count 5), and multiple counts of interstate threats (Counts 6-15). (Jury Verdict, R. 127, PageID ## 1097-98).

Following post-trial briefing, the District Court ruled that Counts 1 and 2 were multiplicitous but agreed with the Government's proposed remedy of vacating Count 1 while leaving Count 2 intact. (Opinion and Order, R. 157, PageID ## 2168-72). The court denied all other post-trial motions, including Mr. Conley's motion for a new trial and motion for judgment of acquittal. (*Id*. at PageID # 2173-78).

V.    Sentencing

On August 21, 2024, the District Court sentenced Mr. Conley to a total of 420 months (35 years) of imprisonment. (Judgment and Commitment Order, R. 166, PageID # 2249). This included:

- 396 months on Counts 2 and 3, to be served concurrently,
- 360 months on Count 4, also concurrent,

- 60 months on Counts 6-15, concurrent with the above, and

- A consecutive 24-month sentence on Count 5.

Upon release, Mr. Conley will be subject to 25 years of supervised release. (*Id*. at PageID # 2250). The court also ordered a $1,400 special assessment, a $5,000 fine, and $1,000 in restitution. (*Id*. at PageID # 2253).

## SUMMARY OF THE ARGUMENT

The District Court committed multiple errors that warrant reversal.

First, the addition of Count 2 after the dismissal of the original indictments raises a strong presumption of prosecutorial vindictiveness. The government had the ability to bring this charge earlier but waited until after Mr. Conley successfully invoked his rights under the Speedy Trial Act. This sequence of events suggests retaliation for exercising a procedural safeguard, violating due process.

Second, the District Court erred in denying Mr. Conley's motion to sever after he was indicted the second time. The joinder of sex trafficking charges related to A.Y. with bank fraud, identity theft, and interstate threats charges related to R.W. created an undue risk of prejudice. The jury was exposed to inflammatory allegations that had little connection to one another, increasing the likelihood of guilt by association. The District Court's reliance on limiting instructions was insufficient to cure this prejudice.

Third, the District Court improperly admitted flight evidence notwithstanding the government's failure to show a sufficient nexus between Mr. Conley's removal of his ankle monitor and a consciousness of guilt related to the charged offenses. Because this evidence was unduly prejudicial, its admission was reversible error.

Fourth, the cumulative effect of the above described errors and those additional errors described below deprived Mr. Conley of a fair trial. Prosecutorial vindictiveness, the improper joinder of counts, the prejudicial admission of flight evidence, and inflammatory closing arguments all combined to undermine the fundamental fairness of the proceedings.

For these reasons, this Court should vacate Mr. Conley's convictions and remand for a new trial.

## ARGUMENT

I.    The District Court Erred in Denying Mr. Conley's Motion for Judgment of Acquittal on Count 2.

The government's decision to add Count 2 only after Mr. Conley successfully moved to dismiss the original indictment raises a strong presumption of prosecutorial vindictiveness. The District Court erred in denying Mr. Conley's motion for acquittal on this count, as the government failed to provide an objective justification for its actions, violating his due process rights.

While prosecutors have broad discretion in deciding whom to charge and what offenses to pursue, this discretion is not unlimited. *Bragan v. Poindexter*, 249 F.3d

476, 481 (6th Cir. 2001). At a minimum, prosecutorial decision-making is constrained by the Due Process Clause, which prohibits the government from punishing a defendant for exercising a protected statutory or constitutional right. *United States v. Poole*, 407 F.3d 767, 774 (6th Cir. 2005) (citing *United States v. Goodwin*, 457 U.S. 368, 372 (1982)). The ultimate decision whether to dismiss an indictment for prosecutorial vindictiveness is reviewed for abuse of discretion. *United States v. Moon*, 513 F.3d 527, 534 (6th Cir. 2008).

A defendant may prove prosecutorial vindictiveness in two ways. First, a defendant can demonstrate actual vindictiveness by presenting objective evidence that the prosecutor acted to punish the defendant for asserting a legal right. *United States v. Dupree*, 323 F.3d 480, 489 (6th Cir. 2003). Alternatively, an indictment may be dismissed if the defendant shows that, under the specific factual circumstances, there is a realistic likelihood of vindictiveness in the prosecutor's actions. *Bragan*, 249 F.3d at 481 (quoting *United States v. Andrews*, 633 F.2d 449, 455 (6th Cir. 1980) (en banc)).

In *Blackledge v. Perry*, 417 U.S. 21 (1974), the Court held that when a defendant convicted of a misdemeanor exercised his right to a de novo trial, the prosecution's decision to escalate the charge to a felony based on the same conduct was presumptively vindictive. *Id*. at 27. The rule established in *Blackledge* serves as a prophylactic safeguard, protecting due process by preventing prosecutorial

retaliation even when there is no direct evidence of improper motive. *See Goodwin*, 457 U.S. at 373–76, 383.

A presumption of vindictiveness arises when two conditions are met: (1) the prosecutor has a stake in deterring the defendant's exercise of rights, and (2) the prosecutor's conduct appears unreasonable under the circumstances. *See Bragan*, 249 F.3d at 482. When these factors are present, courts may infer an improper motive and require the government to rebut the presumption with objective, on-the-record explanations. *Bragan*, 249 F.3d at 482. The government may do so by showing, for example, that the new charge resulted from previously unknown evidence or a legal barrier that no longer exists. *Id*.

That presumption applies here and the government should have been required to present an objective, on-the-record explanation for adding the charge. Mr. Conley was originally charged in 2019. He moved for dismissal under the Speedy Trial Act, and the District Court granted the motion. Rather than reindicting him on the same charges, Count 2 was added, which carried a ten-year mandatory minimum sentence. This charge was based on the same underlying conduct as Count 1—conduct the government had been aware of from the outset.[1] The absence of new evidence, changed circumstances, or intervening legal developments confirms that Count 2 was

---

[1] To this point, the District Court vacated Count 1 after trial because it was multiplicitous. (Opinion and Order, R. 157).

added in retaliation to Mr. Conley's successful motion to dismiss on Speedy Trial grounds.

The government offered various post hoc justifications for adding Count 2, but none withstand scrutiny. (Response, R. 32, PageID ## 338-345) It argued that probable cause alone justified the charge, citing *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978), and pointed to the grand jury's indictment as conclusive proof of legitimacy. But probable cause does not rebut a presumption of vindictiveness when the record shows that the government had the same evidence supporting the charge at the time of the original indictment and strategically chose to add it only after Mr. Conley succeeded in dismissing the case. A grand jury indictment does not insulate a prosecution from a vindictiveness claim where the sequence of events suggests retaliation.

The government also claims that pretrial charging decisions are discretionary, and that no presumption of vindictiveness should apply under *United States v. Goodwin*, 457 U.S. 368 (1982). However, the Sixth Circuit has distinguished pretrial charging discretion from circumstances where a prosecutor's decision is temporally linked to a defendant's assertion of a procedural right. *United States v. LaDeau*, 734 F.3d 561, 567 (6th Cir. 2013) ("[T]he government is incorrect to suggest that *Goodwin* categorically bars a district court from finding that the requisite 'stake' could arise in the pretrial setting.") Unlike in *Goodwin*, where the government's

decision to escalate charges was made before trial proceedings were underway, Mr. Conley's case involved a new, more severe charge added only after he exercised his Speedy Trial rights. Indeed, the prosecutor made its frustration with Conley's decision to exercise his due process rights known:

> The United States even prepared for a trial in July 2022 and filed its pretrial filings. On the eve of his new trial, that he claims he so very much wants, he has moved to dismiss claiming a speedy trial clock violation and Sixth Amendment Speedy Trial act violation.

(Response to Motion to Dismiss, R. 146-2, PageID #1930). The direct temporal link, coupled with the government's on-the-record irritation, raises precisely the kind of realistic likelihood of vindictiveness that courts have found troubling.

Finally, the government has argued that newly bolstered evidence from a February 2023 interview with A.Y. justified adding Count 2. But that interview did not provide new facts unknown to the prosecution at the time of the original indictment—it merely confirmed what investigators already believed. Courts have repeatedly rejected such post hoc rationalizations, requiring the government to point to a substantive, independent reason for the timing of an escalated charge. *See LaDeau*, 734 F.3d at 570 (rejecting an after-the-fact justification when the government already possessed the relevant evidence). Here, the record shows that the government had the ability to bring Count 2 at the outset but waited until after Mr.

Conley exercised his rights to do so. The absence of any legitimate explanation for the delay confirms the retaliatory nature of the charge.

The sentencing disparity between Counts 1 and 2 further underscores the retaliatory nature of the charge. Count 1 carried a maximum sentence of ten years, while Count 2 imposed a mandatory minimum of ten years. This distinction is significant: by dismissing the original indictments and recharging Mr. Conley under a harsher provision, the government increased his sentencing exposure for the same alleged conduct. This Court has cautioned against precisely this type of punitive escalation following a defendant's procedural success. *See LaDeau*, 734 F.3d at 570.

The appropriate remedy is vacatur of Count 2. The District Court's decision to vacate Count 1 due to multiplicity concerns while leaving Count 2 intact ignored the fact that Count 2's very existence was the product of vindictive prosecution. This Court should vacate Count 2 to preserve the fundamental principle that defendants may exercise procedural rights without fear of retaliation.

II.     The District Court Erred in Denying Conley's Motion to Sever Counts 1-2 From Counts 3-15, Resulting In Substantial Prejudice.

The district court originally granted Mr. Conley's motion to sever count 1 (charge related to A.Y.) from counts 2-14 (charges related to R.W.) of the second superseding indictment. (*See United States v. Bryan Conley*, Case No. 3:19-cr-00019-DJH-1, at R. 156). In the Court's own words:

> …[T]he indictment reveals no connection between Count 1 and Counts 2-14. Count 1 charges a different offense, involving a different victim, more than two months before the alleged kidnapping, bank fraud, identity theft, and threats.

(*Id.* at PageID#: 687). Notwithstanding this original severance, after the case was dismissed for speedy trial violations and reindicted, the District Court's refusal to sever Counts 1-2 (alleging transportation for criminal sexual activity related to A.Y.) from Counts 3-15 (involving kidnapping, bank fraud, identity theft, and interstate threats related to R.W.). This refusal was an abuse of discretion that severely prejudiced Mr. Conley's right to a fair trial. *United States v. Rox*, 692 F.2d 453, 454 (6th Cir. 1982) (noting the decision to sever for prejudice is reviewed for abuse of discretion). The charges involved (1) different victims, (2) distinct criminal conduct, and (3) separate time periods, failing to meet the joinder requirements of Rule 8(a). Even if joinder were initially proper, Rule 14(a) required severance to prevent the overwhelming prejudice caused by trying unrelated offenses together.

### A. *The Charges Were Improperly Joined Under Rule 8(a)*

Rule 8(a) permits joinder of offenses only if they are: (1) of the same or similar character, (2) based on the same act or transaction, or (3) part of a common scheme or plan. Fed. R. Crim. P. 8. The charges against Mr. Conley do not meet any of these criteria.

- Different Victims: Counts 1-2 involved alleged conduct with A.Y., while Counts 3-15 related entirely to R.W.

- <u>Distinct Criminal Conduct</u>: Counts 1-2 alleged transportation for illegal sexual activity, whereas Counts 3-15 involved financial fraud, identity theft, and threats.

- <u>Separate Time Periods</u>: The alleged conduct in Counts 1-2 occurred months before the events underlying Counts 3-15.

The only link between these offenses was the Government's claim that Mr. Conley catfished[2] both individuals using the dating app, Plenty Of Fish. This connection is far too tenuous to constitute a "common scheme or plan." *See United States v. Chavis*, 296 F.3d 450, 456 (6th Cir. 2002) (joinder improper where offenses lacked sufficient factual nexus). The substantial differences in victims, evidence, and nature of the offenses confirm that joinder was improper from the outset.

### B. *Even If Joinder Were Proper, Rule 14(a) Required Severance Due to Prejudice*

Even if the initial joinder satisfied Rule 8(a), Rule 14(a) mandates severance when the defendant demonstrates that he will be prejudiced by the joinder of the charges. Prejudice arises where "the jury would be unable to keep the evidence from

---

[2] Catfishing refers to "a person who sets up a false personal profile on a social networking site for fraudulent or deceptive purposes." Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/catfishing (last visited February 14, 2025).

each offense separate and unable to render a fair and impartial verdict on each offense." *United States v. Rox*, 692 F.2d 453, 454 (6th Cir. 1982).

The Supreme Court has long recognized that propensity evidence may unfairly influence a jury, leading to an assumption of guilt rather than an independent evaluation of the evidence. *See, e.g., Old Chief v. United States*, 519 U.S. 172 (1997). For this reason, courts require severance under Rule 14(a) when the risk of prejudicial spillover is so significant that jurors cannot properly compartmentalize the evidence. To justify severance, a defendant must show that the jury was unable "to treat distinctively evidence" from separate charges. *United States v. Johnson*, 763 F.2d 773, 777 (6th Cir. 1985) (quoting *United States v. Gallo*, 763 F.2d 1504, 1524 (6th Cir. 1985)).

That risk was particularly acute here. The evidence supporting Counts 1-2 centered on A.Y.'s testimony and records related to interstate transportation, while the evidence for Counts 3-15 relied on financial documents, identity records, and communications involving R.W. These distinct sets of evidence had little connection to one another, yet were presented in a single trial. As a result, jurors were forced to process two vastly different cases simultaneously, increasing the likelihood of confusion and conflation. The danger was not merely theoretical—the nature of the charges made it all but inevitable that the jury would struggle to separate the evidence and evaluate each count independently.

Beyond the risk of confusion, the joint trial created overwhelming prejudice by exposing the jury to highly inflammatory allegations that had nothing to do with one another. The sexual misconduct allegations in Counts 1-2 cast Mr. Conley in a deeply negative light, which likely tainted the jury's perception of the financial crimes charged in Counts 3-15. This type of spillover prejudice is precisely what Rule 14(a) is designed to prevent. A jury exposed to allegations of sexual exploitation may be more inclined to view the defendant as morally culpable across the board, even in cases where evidence does not support conviction.

The government heightened the prejudice by blurring the distinctions between the two cases. The prosecution interwove evidence related to A.Y. and R.W., making it difficult for jurors to evaluate each set of allegations separately, notwithstanding the fact that the allegations involved different victims, conduct, and took place at wholly different times. This strategy capitalized on the prejudicial effect of the allegations, increasing the likelihood that jurors would convict based on cumulative misconduct rather than the specific evidence for each charge.

By denying severance, the District Court compromised Mr. Conley's ability to present a coherent defense, making it more difficult for the jury to fairly assess the evidence against him. The prejudice stemming from this error was substantial and requires reversal.

III.    The District Court Erred in Admitting Evidence Regarding
        Conley's Flight.

The District Court further erred in admitting evidence of Mr. Conley's flight.

The evidence lacked the necessary temporal and contextual connection to support an

inference of consciousness of guilt, improperly allowing the jury to infer guilt based

on speculative and prejudicial evidence.

A district court's decision to admit evidence of flight is reviewed for abuse of

discretion. *United States v. Dillon*, 870 F.2d 1125, 1127 (6th Cir. 1989). Importantly,

flight evidence is of "relatively weak probative value," *United States v. Perez-*

*Martinez*, 746 F. App'x 468, 477 (6th Cir. 2018), and courts are supposed to apply a

four-step analysis to determine whether such evidence is admissible, assessing

whether: (1) the behavior constitutes flight; (2) the flight is connected to the charged

offenses; (3) the flight suggests consciousness of guilt; and (4) the consciousness of

guilt is specific to the offenses at issue. *Dillon,* 870 F. 2d at 1127 (quoting *United*

*States v. Myers*, 550 F.2d 1036, 1049 (5th Cir. 1977)). To be admissible, "the timing

of flight must itself indicate the sudden onset or the sudden increase of fear in the

defendant's mind that he or she will face apprehension for, accusation of, or

conviction of the crime charged." *Id*. at 1128.

None of these factors exist here. Mr. Conley did not cut his ankle monitor until

five months after being charged. This significant delay severely undermines the

probative value of the flight evidence. Courts have consistently recognized that

immediacy is a critical factor in assessing the relevance of flight. *See Myers*, 550 F.2d at 1051 ("The immediacy requirement is important."). The five-month delay introduces numerous intervening factors that could explain his decision to remove the ankle monitor, none of which were addressed by the government. Without immediacy or corroborating actions, the government's attempt to rely on flight as evidence of guilt is purely speculative.

The lack of immediacy between Mr. Conley's indictment and his alleged flight, coupled with the absence of any corroborating conduct, renders the evidence highly prejudicial and minimally probative. Because the trial court admitted this evidence in error, a new trial is warranted.

### IV.    The Cumulative Effect of these Errors Warrants a New Trial.

Even if none of the errors discussed above independently require reversal, their combined effect rendered Mr. Conley's trial fundamentally unfair, warranting a new trial. The Sixth Circuit has repeatedly held that multiple errors, even if harmless in isolation, can cumulatively deprive a defendant of a fair trial. *See United States v. Hernandez*, 227 F.3d 686, 697 (6th Cir. 2000). Reversal is justified when the cumulative errors "deprived [the defendant] of a trial consistent with constitutional guarantees of due process." *Id*.; *see also United States v. Deitz*, 577 F.3d 672, 697 (6th Cir. 2009) (holding that cumulative error exists when "the

combined effect of individually harmless errors [is] so prejudicial as to render [a defendant's] trial fundamentally unfair").

That standard is met here. The improper addition of Count 2, the erroneous denial of severance, and the prejudicial admission of flight evidence all worked together to undermine the fairness of the trial. These errors distorted the jury's perception of the evidence, heightened the risk of improper inferences, and prejudiced Mr. Conley's defense at every stage of the proceedings. When cumulative errors erode the integrity of a trial, the only appropriate remedy is a new one. This Court should reverse and remand for a new trial to ensure that Mr. Conley receives the fair and impartial proceedings that due process demands.

## CONCLUSION

This Court should vacate Mr. Conley's conviction on Count 2 because its addition was the result of prosecutorial vindictiveness. Alternatively, the Court should reverse the District Court's denial of severance and remand for separate trials on Counts 2 and Counts 3-15. If the Court declines to grant that relief, it should reverse and remand for a new trial due to the improper admission of flight evidence and the cumulative effect of these errors.

Respectfully submitted,

_/s/ William H. Brammell, Jr._
William H. Brammell, Jr.
WICKER / BRAMMELL PLLC
323 W. Main Street, 11th Fl.
Louisville, Kentucky 40202
Telephone: (502) 780-6185
bill@wickerbrammell.com
*Counsel for Appellant, Bryan Conley*

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

I hereby certify that, excluding the parts of the Brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii) and Sixth Circuit Rule 32(b)(1), this brief contains 4,978 words.

I further certify that this Brief complies with the typeface and type style requirements of Federal Rule of Appellate Procedure 32(a)(5) - (6). This Brief has been prepared in a proportionally spaced typeface using Microsoft Word with 14-point Times New Roman font.

*/s/ William H. Brammell, Jr.*
William H. Brammell, Jr.

## CERTIFICATE OF SERVICE

It is hereby certified that a true and accurate copy of the foregoing was electronically filed with the Court on this 24th day of March, 2025, which will electronically notify all counsel of record.

*/s/ William H. Brammell, Jr.*
William H. Brammell, Jr.

# DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS

Pursuant to Sixth Circuit Rules 28(b)(1)(A)(i) and 30(g)(1), Appellant designates the following docket entries:

| RE # | Description | Page ID Range |
|------|-------------|---------------|
| 156 | Memorandum Opinion and Order Granting Severance (*U.S. v. Bryan Conley*, Case No. 3:19-cr-00019-DJH-1) | 686-689 |
| 4 | Indictment[3] | 45-63 |
| 32 | Response to Defendant's Motion to Dismiss for Vindictive Prosecution | 338-345 |
| 55 | Defendant's Objection | 505-510 |
| 122 | Final Jury Instructions | 1042-1088 |
| 127 | Jury Verdict | 1097-1098 |
| 138 | Transcript of Trial Proceedings held on 12/12/23 | 1144-1326 |
| 139 | Transcript of Trial Proceedings held on 12/13/23 | 1327-1579 |
| 140 | Transcript of Trial Proceedings held on 12/14/23 | 1580-1778 |
| 141 | Transcript of Trial Proceedings held on 12/15/23 | 1779-1887 |
| 146 | Combined Motion for Partial Judgment of Acquittal and Motion for New Trial | 1896-1911 |

---

[3] Conley was first indicted on February 20, 2019, in Case No. 3:19-cr-00019-DJH-1. A superseding indictment was filed on June 4, 2019, followed by a second superseding indictment on September 18, 2019, and a third superseding indictment (hereinafter, "the Indictment") on February 7, 2023.

| | | |
|---|---|---|
| 146-2 | Exhibit B to Motion for Partial Judgment of Acquittal and Motion for New Trial | 1930-1946 |
| 149 | Response to Motion for Partial Judgment of Acquittal and Motion for New Trial | 1956-1973 |
| 157 | Memorandum Opinion and Order | 2168-2178 |
| 161 | Sealed Sentencing Memo | 2210-2237 |
| 166 | Judgment and Commitment Order | 2247-2254 |
| 168 | Notice of Appeal | 2259-2260 |